UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *ex rel.* PETER HUESEMAN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE #: 5:14-cv-00212-XR |
| | § | |
| PROFESSIONAL COMPOUNDING | § | |
| CENTERS OF AMERICA, INC., | § | |
| Defendant. | § | |

### DEFENDANT PCCA'S RESPONSE TO PLAINTIFF
### <u>UNITED STATES OF AMERICA'S MOTION FOR PROTECTIVE ORDER</u>

In Doc. 123, the Government seeks protection and to quash PCCA's notice under Rule 30(b)(6) for a corporate deposition regarding the *facts* supporting the Government's damages claims in this case.  PCCA responds as follows.

### <u>Clear Legal Standards</u>

All trial lawyers understand how important it is to be able to require a corporate or governmental entity to produce a single witness who is obliged to testify regarding the *entity's* factual knowledge on a given subject.  Indeed, the official Commentary to the 1970 amendments regarding Rule 30(b)(6) explains that one of the advantages is that it "will curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it."  Both this Court and the Fifth Circuit have recognized this concern. *In re Lopez,* No. 09-70659, 2015 WL 7572097, at *11 (Bankr. S.D. Tex. Nov. 24, 2015); *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir.2006).

As this Court and others have noted, this procedure is often the "most effective way" to obtain information about crucial facts. *See e.g., Burgess v. CIGNA Life Ins. Co. of New York, No. CIVA* SA-04CA0841-XR, 2006 WL 1851391, at *5 (W.D. Tex. June 23, 2006)("The Court

believes a Rule 30(b)(6) deposition provides the most efficient and equitable solution."). *Accord Noble v. Geo Grp., Inc.,* No. A-07-CA-968 LY, 2008 WL 11417013, at *3 (W.D. Tex. Feb. 29, 2008).

The 2020 amendment of Rule 30 incorporated the "proportionality" concerns/limitations from Rule 26. There are times when courts have to weigh these factors in considering disputes about such depositions. When they do "under Rule 26, the first factor — the importance of the issues at stake — is paramount." *Stringer v. Cascos*, No. SA-16-CA-257-OG, 2016 WL 8914448, at *2 (W.D. Tex. Dec. 14, 2016). Needless to say, the Government raises no objection that a deposition seeking information about its enormous damages claims in this case is not "proportional." Nor could it. Indeed, at the June 16, 2022 hearing, in discussions with counsel about the scope of discovery, the Court itself noted that, if the Government was "talking about a billion dollars too and the proportionality analysis, that's quite a large amount in controversy." Doc. 98 at 21.[1]

The Government appropriately cites Chief Judge Garcia's decision in *Westheimer Regency I, L.P. v. Great Lakes Reinsurance (UK) SE*, No. 5:18-CV-14-OLG, 2018 WL 7198643 (W.D. Tex. Aug. 20, 2018) as providing helpful guidance for the Court's discretion as it rules on this motion.[2] As recipient of the Notice the Government "bears the burden of demonstrating to the

---

[1] Government counsel responded by advising the Court that it had focused its claims on "ten ingredients." The Court then clearly stated that "discovery is limited to those issues." *Id.* at 22. On the following page, continuing the same colloquy, DoJ counsel advised the Court again that the ten ingredients listed in the Complaint in Intervention would "produce overpayments of, you know, over $100 million" and added – using a very specific term of art – "we have limited our **complaint** to the ten ingredients." *Id.* at 23 (Emphasis added).

As noted in other pleadings being filed in response to the Government's most recent Motion to Compel, PCCA is asking the Court to hold the Government to its Rule 11 representation and to adhere to the limit on damages discovery that it imposed as a result of them.

[2] *Westheimer Regency* is a curious peg on which to hang the Government's hat, because (a) it

court that the notice is objectionable or insufficient." *Id.* Additionally, the party presenting a corporate designee witness has an "obligation to 'prepare [him/the witness] to give 'knowledgeable and binding answers for the corporation.' " *Id.* More fulsome direction concerning this obligation to prepare the designated witness appropriately is contained in this Court's recent opinion in *Rusesabagina v. GainJet Aviation S.A.*, No. SA-20-CA-01422-XR, 2022 WL 17331272, at *4 (W.D. Tex. Nov. 29, 2022), as follows:

> "[T]he deponent must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the party noticing the deposition and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed as to the relevant subject matters." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (internal alterations and quotation marks omitted) (quoting *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997)). "When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition." *Id.* These principles bind a party to its corporate representative's answers and prohibit a party from later introducing evidence on a topic where its representative disclaimed knowledge during the deposition.

*Id.* With that prelude, we address the Government's arguments *seriatim.*

**1.     The Deposition Notice is Hardly Premature.** Relator Hueseman filed this case in 2014. The Government then conducted an exhaustive "civil" investigation for more than seven years before actually intervening. During this investigation, PCCA produced something on the order of magnitude like one million pages of documents, and 19 different company witnesses who gave deposition-like sworn and transcribed testimony.

When the Government finally and formally intervened in November of 2021, it cobbled all of this information together into a 206 paragraph Complaint in Intervention, essentially cherry-picking suggestive material that it had accumulated. Doc. 61. At the June 22, 2022 hearing, this

---

rejects similar or analogous grounds for objection raised by the Government in this case and (b) **grants** the Motion to Compel the testimony.

Court told the parties to get moving with discovery.  The Government's Rule 26 Initial Disclosures, filed on July 1, 2022, regarding damages essentially said, "wait until we hire and designate our experts."  Its May 19, 2023 First Amended Disclosure (filed in response to receiving a draft of Plaintiff's Motion to Compel) and this Motion for Protection largely echoes that same contention.

Expert reports are due in November 2023.  Despite the Government's contention – unsupported by citation to any case directly on point – damages are not the exclusive domain of hired experts.  Experts have to base their opinion testimony on relevant *facts*.  The Notice of Deposition seeks those facts.  And we need to have them now.

The Government attempts to support its prematurity argument by contending that it still needs even more information from PCCA before being able to compute its damages.  With respect, the Government had nearly eight years to investigate this case, took 19 sworn statements from PCCA personnel, and received more than one million pages of documents prior to intervening.  It is time for the Government to "disclose" a single "computation" of damages and to tender a witness to testify the Government's knowledge about the *facts* supporting those damages claims.

**2.      Factual Testimony About Damages is Appropriate Under Rule 30(b)(6).**  To be sure, expert testimony regarding the *amount* of damages is appropriate, and, in some cases, necessary.  On the other hand, damages are not the exclusive domain of expert testimony.  Testimony about how those damages were **caused**, and what facts underlie the damages computations are appropriate topics for 30(b)(6) testimony.  A careful reading of the Government's lead case *Lone Star Tech. Innovations, LLC v. ASUSTeK Computer Inc.*, No. 6:19-CV-00059-RWS, 2020 WL 6803258, at *2 (E.D. Tex. Sept. 18, 2020) shows this to be the case, and, carefully read, supports PCCA's request for a 30(b)(6) deposition in this case:

> "Lone Star responds by saying that because Barco has disclosed expert reports, it should now be required to produce a corporate representative. But Barco is not

objecting to the timing of the 30(b)(6) testimony; it is claiming that the testimony
is not proper 30(b)(6) testimony at all.

> Even so, **Barco is incorrect.** Many of the topics properly seek the
> factual basis for Barco's contentions, rather than the contentions
> themselves."

*Id.* (Emphasis added). The only other case cited by the Government, *i.e., Tiemann v. Yeres,* No.

A-18-CV-301-LY, 2019 WL 919013, at *3 (W.D. Tex. Feb. 22, 2019), also supports PCCA's

Notice of Deposition in this case.  In that case, Magistrate Judge Austin held that a corporate party

had an obligation to present and prepare a witness to testify to facts *within the party's knowledge.*

The snippet that the Government quotes deals with defensive issues, perhaps supported by expert

testimony, but with facts unknown to the Defendant Apple in that case.  PCCA does not seek a

witness to testify to facts "unknown."  It seeks testimony about what the United States Government

*knows* and what evidence it has to prove it.

The Government's Motion and some of the pertinent case law discuss the issue of damages

discovery as sometimes involving "contentions" as opposed to facts or evidence and also suggests

that this deposition is an effort to intrude into Government's counsel's work product regarding

theories of liability and damages.  Let us be clear.  PCCA believes that it understands the principal

thrust of the Government's liability "contentions" very well.  The Government contends that

PCCA did several things "wrong," principally (a) published what the Government contends are

"inflated" AWPs, (b) actively marketed the "spread" between the published AWPs and the

pharmacies' "acquisition costs" (c) inserted an "Equalizer" button into its proprietary software to

permit a pharmacy to make its AWP = U&C, and (d) encouraged its members/customers to

"withhold" or "hide" their true acquisition costs from ESI and TRICARE.

The Government also contends that one or more of these allegedly wrongful acts

knowingly "caused to be presented" claims that were "false or fraudulent" within the ambit of the

FCA.  Moreover, it appears from its current Disclosures that it contends that PCCA is liable for monetary damages and statutory penalties for each and every claim that was presented and paid that contains any single ingredient from PCCA.

That being said, the Government's contentions regarding *damages* are far from clear.  It has now retreated from its clear representation to this Court that "we have limited our **complaint** to the ten ingredients"  and the $100 million in damages associated therewith, Doc. 98 at 21-23, and it Amended Disclosure lists, not one, but three different possible methods of "computing" damages.  One of them, *i.e.*, seeking to recoup the entire amount of all funds paid by TRICARE for all compounded medications that include even one PCCA ingredient, would probably not even need an expert.  A large calculator, with lots of commas and zeroes would suffice!

PCCA's problem in defending against these extremely broad contentions is that it must be able to discover any facts that support them and the admissible evidence that the Government would use to prove them.  Evidence must either be (a) documentary or (b) testimony by someone with Rule 602 requisite "personal knowledge."

The request for a 30(b)(6) witness to testify under oath as to the Government's knowledge of facts is not about contentions.  It is about what facts the Government has to back them up and what evidence it can offer, other than the carefully selected documents it culled from PCCA's pre-suit production of a million or so pages of documents, to prove that the alleged wrongdoings were a "substantial factor" in the presentation of the claims by the pharmacies and also a substantial factor in monetary damages to the Government.  That is the very purpose of a 30(b)(6) deposition.

To illustrate the point, the Court need look no further than the Supreme Court's opinion in the FCA case of  *United States v. Bornstein*, 423 U.S. 303 (1976).  The "presenter" of claims to the Government was a "prime contractor."  It was alleged to have "presented" 35 claims or invoices that included claims for payment for falsely marked tubes.  Of these, only three were shipped by

the subcontractor defendant.   Yet the Government sought statutory penalties against the subcontractor for all 35 claims.  The Supreme Court focused specifically on each alleged false claim and held that the subcontractor was liable for the three, but not for the entire 35.  With apologies for the length of the quotation, here is what Mr. Justice Stewart had to say about the scope of liability *vis-à-vis* each claim in issue:

> The precise issue presented here is whether the subcontractor should be liable for each claim submitted by its prime contractor or whether it should be liable only for certain identifiable acts that it itself committed.
>
> ***
>
> The difficulty with this position is that it fails to distinguish between the acts committed by Model and the acts committed by United.  **The distinction is a critical one, because the statute imposes liability only for the commission of acts which cause false claims to be presented.**
>
> ***
>
> **The Act, in short, penalizes a person for his own acts, not for the acts of someone else.** . . .  The Government suggests that United assumed the risk that Model might send 35 invoices when United sent the falsely branded tubes to Model.  The statute, however, does not penalize United for what Model did. It penalizes United for what it did.

*Id.* at 312-13 (Emphasis added).

Causation is inextricably intertwined with the proof and "computation" of damages.  And in this case, the Government bears the burden of proving TWO different forms of causation.  First, it must prove that something that PCCA "knowingly" did wrong "caused to be presented" a "false or fraudulent" claim or claims.  Second, it must prove that the presentation of that claim caused a specific amount of monetary damages.  As this Court's jury instructions in the *PVA* case illustrate,

the Government's burden is to show that the conduct in issue was a "**substantial factor**" in both the presentation of the claim and the damages.[3]

No hired expert will have the requisite Rule 602 personal knowledge to testify with regard to either of the Government's requisite causation issues. Any expert will undoubtedly have to assume causation in both respects. But the Jury cannot "assume" the facts giving rise to treble damages and statutory penalties. It must base its verdict on admissible evidence regarding same. Therefore, PCCA, and more importantly this Court, must know what facts/evidence the United States Government has to support its enormous, alleged damages claims in this case.

Rule 30(b)(6) provides the vehicle for discovery of those facts because, as the case law, particularly including this Court's recent opinion in in *Rusesabagina, supra,* makes clear, the Government has an obligation to make sure that its designated representative for such testimony is prepared with all of the factual knowledge that the Government has on point.

**3.      The Government's June 12, 2023 Document Production Is Hardly Sufficient "Factual Information on its Damages."** It is true that on June 12, 2023, the Government finally[4]

---

[3] Without getting too far into the weeds at this early stage, PCCA would point out that the notion that any single pharmacy's mere inclusion of one PCCA ingredient in a compounded medication that might contain five — including four from a "supplier" that has already paid the Government $20+MM — is hardly sufficient to sustain this burden. It is yet another graphic reason as to why a "sample and extrapolation" method of proof of either liability or damages would violate due process in this case.

[4] We use the word "finally" – not to be snide, caddy or unprofessional about it – but to emphasize for all concerned that this Court was correct in June 2022 when it observed "Now, to the government, I mean, you-all have been investigating for quite a period of time. I mean, I don't see why there's any reason why you can't turn over most of your documents in some kind of a format that you-all can agree to for any discovery platform to review." Doc. 98 at 20.

In all honesty, both parties bear some responsibility for the glacial pace of discovery to this point in time. The Government's first production/disclosure of documents was in February 2022, when it "finally" provided counsel for PCCA with transcripts of the sworn interviews it had taken from their clients years before then. And, although PCCA did provide a million+ pages of documents presuit, and tendered up these 19 witnesses, it did not produce additional documents under the

produced some of the ESI claims adjudication data.  It will, of course, take time for PCCA to wade through that document production.  However, it appears from Government counsel's cover letter that the production includes every single compound prescription paid by TRICARE between January 1, 2012 and March 31, 2012 in which there was even one single PCCA ingredient.  If so, it is the proverbial haystack.

Somewhere in that haystack, there might be a needle or two that might stick a person.  But PCCA is not obliged to find that needle in the haystack.  Rule 26 requires the Government to provide an adequate "computation" of its damages and Rule 30(b)(6) requires it to present a properly prepared witness to testify regarding the facts which undergird it.

Moreover, as is clear from PCCA's Opposed Motion to Compel [Doc. 118], and the Government's Response to same [Doc. 120], this data dump does not begin to answer the question of whether the Court will allow the Government to expand the damages claims exponentially beyond what its counsel represented to the Court in the June 16, 2022 hearing, *i.e.*, "[w]e've identified ten ingredients, and those ingredients themselves involve -- would produce overpayments of, you know, over $100 million. Now, Your Honor, again, we're not talking about every single ingredient, but we are willing to focus our complaint and **we have limited our complaint to the ten ingredients**."  Doc. 98 at 21-22 (Emphasis added).  A second Amended Disclosure, coupled with *factual* testimony from a representative of the Government who is prepared to tell us what the Government actually knew, and when it knew it, is essential to the preparation of a defense for this case.

---

auspices of this particular case until April 2023.

To their credit, counsel on both sides do have a cordial, albeit adversarial relationship, and document production by both is proceeding with some regularity.

## Conclusion

For these reasons, the Motion for Protection and to Quash should be denied and the Government should be ordered (a) to amend further its Rule 26 Disclosures, preferably limiting its damages claims to ten ingredients and $100 million, and (b) then to present a properly prepared witness to testify regarding the following five, plainly worded,[5] topics in PCCA's Notice of Deposition, modified as appropriate by the Court's ruling on the scope of permissible damages:

(1)    "how much money is being sought;"

(2)    "how many claims are asserted to be 'false and/or fraudulent' and which were 'caused to be presented' by PCCA;'"

(3)    "how many different PCCA ingredients, to include inactive bases, are included within the ambit of the damages;"

(4)    "what is the 'measure' of damages and 'method' of computation, to include a full description of how any subset or sample of claims has been chosen and what methodology was used in choosing same to make sure it was a 'representative' sampling of the universe of damages claims;" and

(5)    "just how it is that PCCA's action or inaction constituted a 'substantial factor' in the payment by TRICARE or its PBM agent ESI in the payment of [each of] these claims."

With this information in hand, counsel for all parties can then get a more realistic handle on this case and proceed accordingly.

//
//
//
//
//
//
//

---

[5]  The 2020 amendment of Rule 30 requires a good faith conference regarding a deposition under subsection (b)(6).  As explained by the official comments to this amendment, one of the reasons was to avoid "overlong or ambiguously worded lists of matters for examination and inadequately prepared witnesses."  It was with this amendment in mind that counsel for PCCA (a) wrote five topics for examination in simple plain English, and (b) sent the notice to counsel for the Government for purposes of consultation.  The Government's response to same was this Motion.

Respectfully submitted,

VICKERY & SHEPHERD, LLP

/s/ Arnold Anderson Vickery
Arnold Anderson Vickery
Texas Bar No. 20571800
Earl Landers Vickery
Texas Bar No. 20571900
10000 Memorial Drive, Suite 750
Houston, TX  77024-3485
Telephone: 713-526-1100
Facsimile: 713-523-5939
Email: andy@justiceseekers.com
Email: lanny@justiceseekers.com
*Lead Counsel for Defendant*

Alicia M. Barrs
Texas Bar No. 24109620
BARNES & THORNBURG, LLP
2121 North Pearl Street, Suite 700
Dallas, TX  75201
Telephone: 214-258-4105
Facsimile: 214-258-4199
Email: Alicia.barrs@btlaw.com
*Counsel for Defendant*

Michael A. Battle
David A. Frazee
BARNES & THORNBURG, LLP
555 12th St. NW, Suite 1200
Washington, DC 20004-1275
Telephone: 202-371-6350
Facsimile: 202-289-1330
Email: mbattle@btlaw.com
Email: dfrazee@btlaw.com
*Counsel for Defendant*

Anthony J. Burba
BARNES & THORNBURG, LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: 312-338-5908
Facsimile: 312-759-5646
Email: Tony.burba@btlaw.com
*Counsel for Defendant*

Johnny Sutton
Texas Bar No. 19534250
ASHCROFT LAW FIRM
919 Congress Ave., Suite 1325
Austin, TX 78701
Telephone: 512-370-1800
Facsimile: 512-397-3290
Email: jsutton@ashcroftlawfirm.com
*Co-Counsel for Defendant*

<u>Certificate of Service</u>

I hereby certify that on June 16, 2023, Defendant's Response to United States of America's Motion for Protective Order was electronically filed with the Clerk of Court using the ECF system, that will send an email notification of such filing to the following counsel of record:

Jamie A. Yavelberg, Esq.
Commercial Litigation Branch
P. O. Box 261
Washington, DC  20044

John Deck, Esq.
Mary F. Kruger, Esq.
UNITED STATES ATTORNEY'S OFFICE
601 NW Loop 410 Suite 600
San Antonio, TX 78216

Sanjay M. Bhambhani, Esq.
DEPARTMENT OF JUSTICE
Civil Division, Room 3740
10th & Pennsylvania Ave., N.W.
Washington, DC  20530

Glenn Grossenbacher, Esq.
LAW OFFICE OF GLENN GROSSENBACHER
24165 IH-10 W., Suite 217-766
San Antonio, TX  78257-1160

John E. Murphy, Esq.
Attorney at Law
14439 NW Military Hwy., #108-133
San Antonio, TX  78231

Gary M. Grossenbacher, Esq.
ATTORNEY AT LAW
402 Vale Street
Rollingwood, TX  78746

Jason M. Idell, Esq.
IDELL PLLC
6800 Westgate Blvd., Suite 132
Austin, TX  78745

Rand J. Riklin, Esq.
GOODE CASSEB RIKLIN
 CHOATE & WATSON, P.C.
2122 North Main Avenue
San Antonio, TX  78212-9680

Ronald E. Osman, Esq.
RONALD E. OSMAN & ASSOCIATES, LTD.
P. O. Box 939
Marion, IL  62959

*/s/ Arnold Anderson Vickery*
Arnold Anderson Vickery