UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ) | | |
| *ex rel.* PETER HUESEMAN, ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | CASE #: 5:14-cv-00212-XR |
| ) | | |
| PROFESSIONAL COMPOUNDING ) | | Judge Xavier Rodriguez |
| CENTERS OF AMERICA, INC., ) | | |
| Defendant. ) | | |

**DEFENDANT PCCA'S OPPOSED MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND INFORMATION**

Defendant, Professional Compounding Centers of America, Inc. ("PCCA"), through undersigned counsel, and moves this honorable Court to compel the Government, pursuant to Federal Rule of Civil Procedure ("FRCP") 26, to produce certain documents and information. In support thereof, PCCA would show the Court the following:

### I. Introduction and Overview

The Government's recently disclosed expert reports place single damages in this case as high as $700 million, as a result of nearly 400,000 allegedly false claims. When trebled and added to the resulting civil penalties, the Government is alleging more than $3 billion in damages. Despite the magnitude of the Government's allegations, their approach to discovery has been dilatory, and deficient. Perhaps accustomed to the CID phase of the proceedings where they call the shots with little oversight, the Government has proceeded as though the Federal Rules of Civil Procedure, the Court's discovery orders and the law related to a litigant's discovery obligations do not apply to them. However, in reality, having intervened in this case, the Government is a litigant before the Court, those rule and standards apply, and PCCA is entitled to discovery. PCCA is now

1

seeking the Court's invention to require the Government's compliance with PCCA's discovery requests, many of which have been pending for nearly a year and half.

PCCA seeks relief with respect to four sets of requests:

- First, after nearly a decade of investigating, the Government still has not produced a complete and reliable set of claims data;
- Second, the Government has, and continues to, improperly directed PCCA to conduct third party discovery with the Government's agent Express Scripts, Inc. ("ESI") on numerous issues, including the contracts defining and controlling TRICARE reimbursement to pharmacies submitting claims and information on "offset" payments that pharmacies paid back or was remitted to TRICARE on claims, despite the requested information being within the Government's custody and control under Fifth Circuit Precedent;
- Third, the Government is withholding documents related to its investigation and settlement with Fagron, which it made relevant by alleging Fagron's settlement in support of its Complaint in Intervention.[1]

Throughout discovery, the Government has agreed to produce documents requested by PCCA only if those documents are readily available. They have claimed documents responsive to particular PCCA production requests were not in their possession, only to ultimately produce such documents as exhibits to their own expert's report. They have feigned ignorance on important questions PCCA has asked regarding the data, and refused to facilitate discussions with anyone on the Government's team that is competent to speak about the data. They have produced documents

---

[1] PCCA and the Government are in the process of discussing revised search terms for the Government to apply to documents responsive to PCCA's requests for production. In the event the parties cannot agree on revised search terms, PCCA plans to file an additional motion to compel.

2

in conjunction with their expert report that would have helped answer questions propounded by PCCA that the Government instead indicated they could not answer. PCCA's good faith efforts to work with the government, revise and limit its requests, and to find logical workarounds for the issues raised in this motion have been either rebuffed or left unanswered. It is only with great reluctance and the weight of the looming discovery deadline weighing on its mind that PCCA brings this motion seeking the Court's intervention.

## II. Legal Standard

Federal Rule of Civil Procedure 26(b) grants the Court "broad discretion to control and limit discovery." *Shaver v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 593 F. App'x 265, 274 (5th Cir. 2014) (citing *Mayo v. Tri–Bell Indus., Inc.*, 787 F.2d 1007, 1012 (5th Cir.1986)). Generally, the scope of discovery is broad and permits discovery of any non-privileged matter relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 26(b)(1) specifically provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 37(a)(1) expressly permits a party to move to compel discovery after conducting a meet and confer in attempt to obtain the discovery without court action. Rule 37(a) specifically provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery," however, the motion "must include a certification that the movant has in good faith conferred or attempted to confer with the

person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Courts must treat an evasive or incomplete disclosure, answer, or response as a failure to disclose, answer, or respond. Fed. R. Civ. P. 37(a)(4); *see also Nvision Biomedical Techs., LLC v. Jalex Med., LLC*, No. SA-15-CA-284-RP, 2016 WL 8259333, at *2 (W.D. Tex. Jan. 5, 2016).

"The ultimate purpose of discovery is to seek the truth so that disputes may be settled by what the facts reveal, rather than what facts are concealed." § 1:4. Objectives of discovery, Handbk. Fed. Civ. Disc. & Disclosure § 1:4 (4th ed.); *see also Jampole v. Touchy*, 673 S.W.2d 569 (Tex. 1984). Unfortunately, the Government discovery actions appear targeted at concealing documents and information from PCCA that it requested and is entitled to receive, even going as far as to misrepresent what documents the Government possesses. Thus, PCCA requests the Court compel the Government to comply and provide the requested documents.[2]

**III. Argument**

**A. The Government produced materially deficient claims data and excludes fields PCCA has requested for over a year, including but not limited to the pharmacies submitted AWP price and U&C price**

Fundamentally, this case is about false **claims**. The Government's allegations in this case concentrate on PCCA's alleged causation of false claims by third party pharmacies. Ultimately, the Government cannot carry its burden without demonstrating that actual claims were submitted, without showing the claims were submitted in the way alleged in the Complaint, and cannot prove damages without demonstrating that those claims were paid. Arguably, there is no piece of evidence more important to the Government's case, and therefore PCCA's defense, than the claims

---

[2] Given the Government's conduct described herein with the claims data, pharmacy contracts with ESI/TRICARE that control reimbursement, and other actions, this Court possesses and would be well within its broad discovery powers to fashion appropriate remedy beyond just compelling compliance with the discovery requests.

data reflecting the relevant pharmacies submission and TRICARE's payment of claims. This is why PCCA made numerous requests during the 8 year seal period for the Government to provide the relevant claims data. It's also why a request for the Claims data was among the first discovery requests that PCCA made to the Government on July 15, 2022.

In fact, in its first set of Requests for Production ("RFP") on July 15, 2022, PCCA requested a complete and accurate copy of the relevant TRICARE claims data in RFPs 9, 10, 25, 38 and 39. The Government produced no responsive data until June 12, 2023. PCCA was unable to open the initial file produced due to its size and notified the Government. Ultimately, on July 17, 2023 (more than a year after PCCA's initial, formal discovery requests for the data), the Government produced the data in a viewable format. Unfortunately, the data was missing key fields (*e.g., the pharmacies submitted U&C price*) and was essentially unusable, as the Government failed to provide a data dictionary to allow PCCA and its experts to navigate the data.

On September 12, 2023, PCCA informed the government that the data produced was effectively useless as it was missing key fields, not in NCPDP D.0 format, and did not include a data dictionary, which was necessary for PCCA to be able to interpret the data fields included in the produced data. Without the data dictionary in particular, the data is no more useful than a bucket of random numbers. On September 26, 2023, PCCA counsel followed up with Government counsel about the deficient claims data. On September 29, 2023, the Government stated that it had produced the data its experts were using for their analyses and disagreed that the "claims data is deficient or has missing relevant fields." [3] A data dictionary was not provided until October 6, 2023. Certainly, the Government's claim that no relevant fields were missing seems out of step

---

[3] Importantly, while the claims data provided may include (and exclude) fields the Government wanted to provide to its experts, the claims data provided excludes fields PCCA explicitly requested and is entitled to receive to mount its defense. The Government may not simply exclude information from PCCA's experts simply because it unilaterally decided to exclude the information from its expert.

with the allegations in the Complaint, insofar as the data does not include any standalone field for the AWP or U&C reported by the pharmacies when submitting their claims.

PCCA made several efforts to reasonably resolve remaining questions about the data's completeness and the meaning of key codes.[4] On October 23, 2023, PCCA requested that the Government make someone available to speak with PCCA's expert to answer some technical questions regarding the data, why certain fields were missing, and what the meaning of certain codes were that were not defined in the data dictionary or in other discovery produced by the Government. The Government responded that "[a]s you know, Express Scripts provided the government with the claims data produced to PCCA. Accordingly, any technical questions about the claims data should be addressed by Express Scripts." *See* Ex. A, S. Bhambani Email (Oct. 24, 2023). Ultimately, after another meet and confer with Government counsel, PCCA sent a detailed list of its questions and the missing fields in the data to the Government on October 26, 2023. PCCA also made an attempt to contact ESI's counsel and provided an even more detailed list of questions and missing fields to ESI's counsel, on which the Government was copied. *See* Ex. B, A. Burba Email (Oct. 27. 2023). Ultimately, ESI refused to cooperate outside the context of a Rule 30(b)(6) deposition.

As discussed more fully below, the Government should not be allowed to hide behind or pawn its discovery obligations off on ESI. **This is the Government's Data**. The Government produced it to PCCA. The Government is relying upon it to accuse PCCA of hundreds of millions of dollars in fraud. It is the Government that should be required to timely provide PCCA with a

---

[4] For context, the data contains two columns containing codes purporting to represent specific pricing metrics. These codes include a broad array of three letter codes including ACQ, AWP, U&C, WAC and others. There is no definition of these codes in the data dictionary or any document produced by the government to date. One of the government's experts, based on a document created two years after the *qui tam* in this case was filed, opined that ACQ means AWP. PCCA is simply seeking documents from the government, like the one provided to their expert but not produced to PCCA, that bear on the potential meaning or definition of these codes.

complete set of claims data, with sufficient information to allow PCCA's experts to interpret and analyze the data. Notably, PCCA believes that the Government has documents and information sufficient to answer some or all of its technical questions raised with ESI's counsel, and is simply not producing that information. For instance, one of the key codes that PCCA asked for a definition of was "ACQ." In several written correspondences and phone conversations, the Government never offered to address the meaning of ACQ or to produce any documents that would purport to define it. So the Court can imagine PCCA's surprise when, weeks later one of the Government's experts purported to define ACQ in his report, and even attached an exhibit (a document that has never been produced to PCCA in discovery) that on its face alleged to define ACQ.[5]

In the end, the Government's claims data is woefully incomplete. The Government has informed PCCA that if it insists on receiving all fields in the relevant data (as it originally requested in July 2022), it will take ESI approximately two more months to provide updated data. More to the point, two months is simply not an acceptable timeframe.[6] It has been 17 months since PCCA asked for a complete set of claims data. In fact, it has been nearly a decade since the original *qui tam* was filed in this case and more than three years since current PCCA counsel first asked for the claims data pre-intervention.[7] In a false claims act case, the claims data should be easily accessible

---

[5] The Government's expert Hines appended 73 exhibits to his report. Of those, fourteen exhibits had not been produced to PCCA. It was the use of this never before produced material by the Government's expert that necessitated the requested extension of PCCA's expert report deadline.

[6] PCCA recently learned that the reason two months is required is because ESI is not providing the data as it is contained in the normal course. Instead, ESI appears to be transforming the original data in a "complicated mapping process that [ESI] needs to conduct in order to match the requested additional fields with appropriate tables where the data resides." Putting aside that this is the first time PCCA was informed ESI was transforming the data from its normal course and placing data into the fields produced, the current key questions are: (1) why the Government did not have ESI include the data fields PCCA requested originally, especially the pharmacy submitted AWP and U&C?, and (2) is PCCA's defense to be punished for the Government's and its agent's dilatory discovery actions on claims data in a false claims act case that's been investigated for nearly a decade?

[7] Undersigned counsel understands that prior PCCA counsel also made several, similar requests for the claims data pre-intervention, which were similarly denied.

and among the first items produced. Either the Government is playing games or its entire case is built on a house of cards, because PCCA fails to see how the data produced to date could even be admissible in trial, given the ambiguity inherent in undefined codes, the transformation of the data, and the incompleteness of data.

This Court has held that "[a]n evasive or *incomplete* disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." *Nvision Biomedical Techs., LLC v. Jalex Med., LLC*, No. SA-15-CA-284-RP, 2016 WL 8259333, at *2 (W.D. Tex. Jan. 5, 2016) (emphasis added). Other Courts have acknowledged that productions which are illegible, unintelligible, unusable, or otherwise useless due to the absence of important data should be deemed incomplete and non-responsive to discovery requests: *See e.g. Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*, No. 1:16-cv-10317, 2023 WL 1452062 at *5-*10 (E.D. Mich. Feb 1, 2023) (finding that Blue Cross Blue Shield of Michigan violated a discovery order when it did not make a complete disclosure when it produced claims data spreadsheets with missing key data fields which were present in earlier productions); *See Haywood v. Wexford Health Sources, Inc.*, No. 16-CV-3566, 2021 WL 2254968 at *7 (June 3, 2021) (finding that medical records were incomplete and not reasonably usable as required by Fed. R. Civ. P. 34(b) due to the fact that "it [was] impossible to read any of the column headers in their entirety because at least some of the words [had] been cutoff where the headers meet the spreadsheet's rows. . . ." and because it was apparent that the spreadsheet included an additional column of missing information that had been cut off in its entirety).

This Court has broad authority to manage and direct discovery, and to say the Government's data production is incomplete is an understatement. PCCA asks that the Court order the Government, by no later than December 10, 2023, to produce all missing data fields. Most

notably, the data produced only has one column representing the pricing information submitted by the relevant pharmacy. This column reflects only one price, and that price is signified as ACQ, AWP, U&C, and other codes.[8] This suggests that other pricing information submitted by the pharmacies that was not relied upon by ESI in paying the claims. However, PCCA requested all of the pricing metrics submitted by the pharmacies and is entitled to receive that information. The Government has alleged that three metrics, Usual and Customary Price, AWP and acquisition cost, were required to be submitted for a claim to be paid. Complaint at ¶ 45. The Government has also alleged that PCCA's software included a feature that would allow its customers to automatically adjust its U&C price to match its AWP price. *See* Doc. 66, ¶ 117. These and other allegations made by the Government cannot be vetted and adequately defended against if the data does not contain the information allegedly submitted.

As such, PCCA requests all the data fields identified in its October 27, 2023 email to ESI's and Government counsel, including a standalone U&C, ACQ and AWP field reflecting what was submitted by the pharmacy with the claim. *See* Ex. B. The Government should also be compelled to produce information and documents in its possession sufficient for PCCA and its experts to ascertain the meaning of the various codes. If this information is not produced by December 10, PCCA's experts have indicated that they will likely not have time to consider and analyze the information in time for the parties' newly agreed extended discovery report deadline of December 18.

---

[8] In many instances, the price metric listed in this column does not match the price metric code reflected in the column that purports to identify the price metric selected by ESI to pay the claim. For instance, one column might indicate that the pharmacy submitted its U&C price (presumably Usual and Customary, but again the Government has not produced any documents or information purporting to define the code U&C), and the other column will reflect that the claim was paid on WAC (presumably Wholesale Acquisition Cost).

### B. The Government is in Possession, Custody or Control of TRICARE related documents and information in ESI's possession

PCCA has sought categories of documents from the Government and ESI, including: (1) contracts between ESI or TRICARE, and any pharmacy that allegedly submitted a false claim (RFP 52) and (2) documents and communications relating to "offsets," which refer to the amount of money paid back or that was later remitted to the Government by pharmacies that allegedly submitted false claims (RFP 53). The Government objected to PCCA's requests, claiming that they are in ESI's possession and thus, PCCA's requests were more appropriately directed to ESI. *See* Ex. C, U.S.'s Objections and Responses to PCCA's Second Set of Requests for the Production of Documents ("PCCA's Second Set of RFPs", at Responses 52-53. These requests relate directly to TRICARE and the alleged false claims, alleged reimbursement, and alleged damages. Ultimately, even if the requested documents are in its agent ESI's physical possession, the Government nonetheless has an obligation and duty to produce these documents.

The Federal Rules allow a party to seek documents that are in another party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Federal courts, including those in the Fifth Circuit have "consistently held" that documents in a third-party's possession are within a party's control and, thus, discoverable, if that party has the "legal right to obtain the documents on demand." *Alex v. KHG of San Antonia, L.L.C.*, No. SA-13-CA-728-OLG, 2014 WL 12489735, at *5 n. 50 (W.D. Tex. Aug. 6, 2014). This Court has specifically found that Rule 34(a) imposes a duty on responding parties to make reasonable efforts to obtain and produce relevant discovery held by third-parties. *See, e.g.*, *Parrish v. Premier Directional Drilling, L.P.*, No. SA-16-CA-00417-DAE, 2017 WL 8774230, at *5 (W.D. Tex. Mar. 1, 2017) (finding that a producing party's effort to reach out to a third-party to obtain relevant data was "precisely the call of duty imposed by Rule 34" and ordering party to obtain and disclose documents that it has a legal right to obtain from a third

party). Based on this Court's precedent, a party is deemed in control of third-party records if it has the power to "determine who shall have access by either granting or withholding [their] consent [to produce the documents]." *See Alex*, 2014 WL 12489735 at *5 n. 50 (citations omitted). Further, "the cases almost universally hold . . . that Rule 34, along with Rule 37, empowers federal courts to compel a party to sign written authorizations consenting to the production of various documents." *Id.* (citing *Lischka v. Tidewater Serv., Inc.*, No. 96-296, 1997 WL 27066, at *2 (E.D. La. Jan. 22, 1997); *United States ex rel. Woodard v. Tynan*, 776 F.2d 250, 252 (10th Cir. 1985)). The Fifth Circuit has held that a district court may sanction parties who fail to comply or cooperate with discovery by requiring a written authorization to release information from third parties. *Id.* (citing *McKnight v. Blanchard*, 667 F.2d 477, 481–82 (5th Cir. 1982)).

ESI is a Government contractor who is regularly required to share documents, data, and communications with the Government on demand. The Government does not deserve the benefit of the doubt here. In response to PCCA's RFP 52, requesting contracts between ESI and pharmacies, the Government stated expressly and unequivocally that PCCA's request for these contracts "seeks documents in the possession of third parties that are not within the possession, custody, or control of the United States." Ex. C, PCCA's Second Set of RFPs, at 7. The Government declined to produce documents responsive to this request and instructed that "PCCA should request those contracts directly from ESI." *Id.* at 8. These statements were made on October 16, 2023. Less than a month later, the Government disclosed its expert reports on November 13, 2023. One of the Government's experts attached multiple contracts to his report, presumably having been provided those documents by the Government at some point prior to the Government's statements disclaiming possession of such documents. (which was requested in PCCA's RFP 52). Moreover, in recent correspondence with the Government, they disclosed that

11

they had requested at least 20 of these contracts from ESI, and presumably had those in their possession as well. It has also come to PCCA's attention that despite referring PCCA to ESI's outside counsel to seek documents, the Government has been working with in-house lawyers at ESI directly to obtain documents. The record clearly shows that there is a disparity of access to materials held by ESI, that there is a sufficient agency relationship between ESI and the Government to allow the Government to obtain this documents, and that the Government's assertions that they do not possess these documents are untrue.

Similar to the ESI/TRICARE contracts with pharmacies, the documents relating to "offset"[9] payments or remittances from pharmacies to TRICARE related to the alleged "false claims" is especially important to an accurate determination of damages in this case. The documents requested show the amount of money the pharmacies either repaid money to TRICARE or that TRICARE/ESI remitted money from future reimbursement payments to the pharmacies. As PCCA informed the Government prior to its recent expert disclosures, such documents are necessary for PCCA's expert's analysis and to rebut any damages alleged. Simply put, if the Government received or recouped money back from a pharmacy (i.e., an "offset"), the amount of damages sought against PCCA is overstated. Additionally, and perhaps the most perplexing, the Government's insistence that it lacks possession, control or custody of ESI documents all the while utilizing those documents for their expert report illustrates an inexcusably cavalier approach to discovery that should be corrected.

---

[9] Despite the Government's Objections to PCCA's RFP 53 stating it did not know what PCCA was referring to when it used the term "offset" to describe money paid back to or recouped by TRICARE following an audit, in response to PCCA's interrogatories the Government (on the same day) cited the ESI's provider manual provision saying an "audit" may be conducted of pharmacies that my result in a reduction and "offset." As such, the Government feigning of ignorance that they did not and do not know what an "offset" is clearly untrue and has caused significant delay.

Accordingly, the Court should grant this motion to compel and order the Government to produce all of the requested contracts between ESI and pharmacies the government alleges submitted fraudulent claims[10] as well as the requested evidence related to offsets payments or remittances related to the alleged false claims.

### C. The Government must produce discovery related to its prior settlement with Fagron Holding USA LLC used to support its allegations against PCCA.

The Government's Complaint references its settlement with one of the parties in a similar *qui tam* action brought against Fagron Holding USA LLC. Compl., ¶ 174. Specifically, the Government uses the settlement as evidence that its theory of liability against PCCA has merit. Thus, PCCA sought discovery on this settlement. *See* Ex. D, Government Resp. and Obj. to PCCA's First Request for Documents, at RFP# 5.

Contrary to the Government's contention, such discovery is plainly relevant. *Robinson v. Pytlewski*, No. 8:19-CV-1025-DLB, 2022 WL 4095355, at *10 (D. Md. Sept. 7, 2022) (acknowledging that a party is entitled to comprehensive discovery on every allegation in the complaint unless the discovery would be burdensome). Practically, without this information, PCCA is unable to fully defend itself against the Government's claims that the settlement supports its case. Sister districts have found that a party may not "wield its sword" by relying on a document to support its complaint while shielding itself from discovery of the document itself. *See Luv n' Care v. Laurain*, No. CV 3:16-00777, 2020 WL 534177, at *4 (W.D. La. Feb. 3, 2020) ("It was

---

[10] PCCA has been trying to work with the Government to resolve this issue. PCCA was considering seeking only approximately 23 contacts for the top billing pharmacies. However, given the Government's disclosure of its access to ESI's in-house counsel and its past successful attempts to obtain these contracts, PCCA believes that the Government should produce all of these contracts. Based on PCCA's review of the data produced by the Government, this should be approximately 1,900 documents. These documents are vital to understanding the specific agreements regarding reimbursement ESI had with the pharmacies.

EZPZ that chose to wield its sword and it cannot now shield from discovery the documents related to the '823 Application.").

Citing 31 U.S.C. § 3733, the Government argues that it cannot disclose any relevant documents related to the Fagron settlement without Fagron's consent. However, § 3733 permits disclosure of CID materials "for official use" by DOJ attorneys appearing before a Court when such production is deemed "required." *See* 31 U.S.C. § 3733 (2018). Official use is defined to include "any use that is consistent with the law, and regulations and policies of the Department of Justice, including . . . preparation for and response to civil discovery requests." *Id.* at (1)(8). Such "official use" does not require consent of the producing party, in this case, Fagron.

Finally, any concerns the Government raises regarding the sensitivity of CID materials is misplaced: the materials would ultimately be subject to the parties' agreed-upon protective order. Further, PCCA would agree to seek the government's consent, or if necessary, the Court's leave, before submitting any material designated as produced by Fagron on the record or into evidence. Based on the above, the Court should not allow the Government to use 31 U.S.C. § 3733 to pass the buck on its own discovery obligations and instead, compel production of the CID documents used to support the Government's allegations against PCCA.

## IV. <u>Conclusion</u>

Based on the foregoing, the Court should find that the Government has failed to sufficiently respond to PCCA's requests for production, and grant PCCA's motion to compel.

Respectfully submitted,

Date: December 4, 2023

BARNES & THORNBURG LLP

By: *Anthony J. Burba*
Anthony J. Burba
Barnes & Thornburg, LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606
Telephone: (312) 338-5908
Tony.burba@btlaw.com

Michael A. Battle
David A. Frazee
Barnes & Thornburg, LLP
555 12th Street, N.W.
Suite 1200
Washington, D.C. 20004-1275
Telephone: (202) 408-6922
Fax: (202) 289-1330
dfrazee@btlaw.com
mbattle@btlaw.com

Alicia M. Barrs
Barnes & Thornburg, LLP
2121 North Pearl Street, Suite 700
Dallas, TX 75201
Telephone: (214) 258-4105
Alicia.barrs@btlaw.com

*Counsel for Defendant PCCA*

# CERTIFICATE OF SERVICE

       I certify that on this December 4, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing on the counsel of record.

Jamie A. Yavelberg, Esq.
Commercial Litigation Branch
P. O. Box 261
Washington, DC 20044

John Deck, Esq.
Mary F. Kruger, Esq.
UNITED STATES ATTORNEY'S OFFICE
601 NW Loop 410 Suite 600
San Antonio, TX 78216

Sanjay M. Bhambhani, Esq.
DEPARTMENT OF JUSTICE
Civil Division, Room 3740
10th & Pennsylvania Ave., N.W.
Washington, DC 20530

Glenn Grossenbacher, Esq.
LAW OFFICE OF GLENN GROSSENBACHER
24165 IH-10 W., Suite 217-766
San Antonio, TX 78257-1160

John E. Murphy, Esq.
Attorney at Law
14439 NW Military Hwy., #108-133
San Antonio, TX 78231

Gary M. Grossenbacher, Esq.
ATTORNEY AT LAW
402 Vale Street
Rollingwood, TX 78746

Jason M. Idell, Esq.
IDELL PLLC
6800 Westgate Blvd., Suite 132
Austin, TX 78745

Rand J. Riklin, Esq.
GOODE CASSEB RIKLIN
CHOATE &WATSON, P.C.
2122 North Main Avenue
San Antonio, TX 78212-9680

Ronald E. Osman, Esq.
RONALD E. OSMAN & ASSOCIATES, LTD.
P. O. Box 939
Marion, IL 62959

Arnold Anderson Vickery
Texas Bar No. 20571800
Earl Landers Vickery
Texas Bar No. 20571900
10000 Memorial Drive, Suite 750
Houston, TX 77024-3485
Telephone: 713-526-1100
Facsimile: 713-523-5939
Email: andy@justiceseekers.com
Email: lanny@justiceseekers.com

Johnny Sutton
Texas Bar No. 19534250
ASHCROFT LAW FIRM
919 Congress Ave., Suite 1325
Austin, TX 78701
Telephone: 512-370-1800
Facsimile: 512-397-3290
Email: jsutton@ashcroftlawfirm.com

                                          *s/ Anthony J. Burba*