IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* PETER HUESEMAN, | ) | |
| Plaintiff, | ) | |
| v. | ) | **SA-14-CA-212-XR** |
| PROFESSIONAL COMPOUNDING CENTERS OF AMERICA, INC., | ) | |
| Defendant. | ) | |

**UNITED STATES' NOTICE OF SUPPLEMENTAL AUTHORITY**

The United States respectfully submits this Notice of Supplemental Authority to advise the Court of additional decisions that support its pending Opposed Motion to Exclude the Expert Testimony of William Wallace. ECF No. 207 (April 14, 2024).[1] These decisions make clear that a court must exercise its gate-keeping role and exclude an expert who: (1) proffers opinions without independent analysis grounded on sufficient facts and data; (2) opines on an agency's state-of-mind and suggests hypothetical actions the government could have taken; and (3) is designated as a non-retained expert but was not involved in the ground level events giving rise to the litigation and failed to prepare a proper expert report. For reasons set forth in the United States' *Daubert* motion and as explained below, Dr. Wallace should be excluded from serving as an expert in this case.[2]

[1] The United States has also moved to exclude PCCA experts Dorothy DeAngelis and Dr. Scott Carr (ECF No. 227 (May 20, 2024)) and for partial summary judgment (ECF No. 230 (May 20, 2024)). These motions have been fully briefed since August 9, 2024, and also remain pending.

[2] The United States also wishes to advise the Court of the decision of the Eleventh Circuit holding that "[t]he qui tam provisions of the False Claims Act do not violate the Appointments Clause" of

**Lack of Sufficient Facts and Data**

In *Harris v. FedEx Corp. Servs.*, 92 F.4th 286 (5th Cir. 2024), the Fifth Circuit determined that the district court "abdicated its role as a gatekeeper" when it allowed an expert to testify "without a proper foundation[.]" *Id.* at 303–04. The district court had allowed the plaintiff's expert to testify about the defendant's policies and procedures based on "experience in the HR area" and because she had been permitted to testify in federal courts on other occasions. *Id.* at 303. The expert admitted, however, that she did not have "knowledge of [the defendant's] HR policies and procedures" and that her testimony was based only on her review of the complaint. *Id.*

The Fifth Circuit found this to be "problematic because an expert's testimony must be 'based on sufficient facts or data.'" *Id.* The Court explained that while an expert may rely on information provided by a party's attorney, "an expert cannot forgo [her] own independent analysis and rely exclusively on what an interested party tells them." *Id.* While acknowledging that the district court has "broad discretion" over its evidentiary rulings, the Fifth Circuit concluded that the expert's opinions about the defendant's policies and procedures, and her opinion that

---

the Constitution. *See United States ex rel. Zafirov v. Fla. Med. Assocs., LLC et al.*, No. 24-13581, 2026 WL 2581886, at *1 (11th Cir. Sept. 1, 2026). In opposing the United States' motion for partial summary judgment, PCCA submitted a Notice of Supplemental Authority, arguing, among other things, that "the *qui tam* provisions of the False Claim Act are an unconstitutional violation of the Appointments Clause under Article II of the Constitution." ECF No. 255 at 1. PCCA relied on the district court's decision in *Zafirov*, which had dismissed a *declined* FCA action, concluding that the relator is an officer of the United States but lacks proper appointment under the Appointments Clause. The Eleventh Circuit has now vacated the district court's dismissal, concluding that a relator does "not occupy a continuing position" and is not therefore an "officer[] of the United States subject to the Appointments Clause." *Zafirov*, 2026 WL 2581886, at *7. Accordingly, the Eleventh Circuit vacated the dismissal and remanded for the district court to consider the defendants' other constitutional arguments.

discrimination did occur, "should not have been allowed through the gate." *Id.* at 304[3]; *accord Engilis v. Monsanto Co.*, 151 F.4th 1040, 1052 (9th Cir. 2025) ("the district court properly concluded that Engilis failed to establish by a preponderance of the evidence that [the expert's] conclusion was based on sufficient facts or data").

*Harris* is directly applicable and precludes PCCA's expert Dr. Wallace from testifying as an expert in this case. Dr. Wallace purports to opine on Express Scripts' claims data and its use of the ACQ code during the claims adjudication process. However, Dr. Wallace admitted that he neither reviewed nor analyzed the claims data himself, explaining "[t]hat would have been three months of my life." ECF No. 207-2, Wallace Dep. at 114:4–115:3. And although he opined that "ACQ is not AWP," he admitted that he had no personal knowledge about Express Scripts' adjudication of TRICARE claims because he "was not there." ECF No. 207-2; Wallace Dep. at 30:24–31:4. Further, when shown internal Express Scripts documentation and testimony that conflicted with his opinion, he admitted he would "have to see an adjudicated claim to see how it was treated." *Id.*; Wallace Dep. at 119:3–4.[4]

[3] The Court assumed *arguendo* that the jury had relied upon the expert's testimony in awarding punitive damages but concluded that such "prejudice is cured by our overturning the jury's punitive award." *Id.* at 304. The Court, however, declined to disturb the jury's compensatory damages award because the defendant had not shown that the expert testimony influenced the jury or had more than a very slight effect on its verdict. *Id.*

[4] Express Scripts' use and meaning of its own internal code during its adjudication of claims is within the authoritative knowledge of Express Scripts. Dr. Wallace's opinion about the ACQ code is contradicted by Express Scripts' internal documentation, the sworn testimony of Express Scripts' Rule 30(b)(6) witness, and the very claims data that Dr. Wallace could have but failed to analyze. *See Ecofactor*, *Inc. v. Google LLC*, 137 F.4th 1333, 1346 (Fed. Cir. 2025) (en banc) ("[w]here, as here, the relevant evidence is contrary to a critical fact upon which the expert relied, the district court fails to fulfill its responsibility as a gatekeeper by allowing the expert to testify at trial"). As this Court concluded when rejecting PCCA's arguments on the ACQ code in PCCA's *Daubert* motion: "PCCA has offered nothing but speculation to suggest that Express Scripts used the code 'ACQ' to denote something other than AWP, let alone offered a plausible alternative definition." ECF No. 224 at 12.

Dr. Wallace's admitted failure to analyze the claims data underscores the fatal defect with his opinions—they are not based on any "facts or data" as required by Fed. R. Evid. 702. Instead, Dr. Wallace simply parroted what PCCA's counsel told him without undertaking the required "independent analysis" of the claims data to support his opinions. Because Dr. Wallace's opinions lack any "proper foundation," they cannot be "allowed through the gate." *Harris*, 92 F.4th at 303–04.[5]

**<u>Impermissible Opinions About State of Mind and Hypothetical Government Action</u>**

In *United States ex rel. Shepherd v. Fluor Corp.*, Civ. No. 6:13-cv-02428-JD, 2026 WL 105725 (D.S.C. Jan. 14, 2026), the Court held that "[e]xpert testimony may not speculate about a party's intent or credibility, nor may it opine on how particular decisionmakers would have acted under counterfactual circumstances." *Id.* at *5. The Court explained that "this limitation is especially salient where, as here, the decision-making process at issue is concededly discretionary and subjective, and where the expert lacks a factual basis or reliable methodology for reconstructing the reasoning of individual decision-makers." *Id.* Accordingly, the Court excluded the relator's expert in a False Claims Act case from offering opinions regarding the defendant's "intent, honesty, motive, credibility, or state of mind," including whether such opinions are "stated expressly or implied through characterizations, narrative framing, or evaluative language describing [the defendant's] conduct or alleged motivations." *Id.* at *8. The Court further held that the expert could not "offer opinions speculating about how specific Government officials,

---

[5] The Advisory Committee Notes to Rule 702 make clear that the proponent of the expert bears the burden to show that the expert's conclusions are based on "sufficient facts or data." *See* Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("[T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."). In this case, PCCA has failed to demonstrate by a preponderance of the evidence that Dr. Wallace's opinions are based on sufficient facts or data.

exercising discretionary authority, . . . would have acted had they been presented with different or additional information." *Id.* The Court explained that "[s]uch opinions are inherently speculative and lack a reliable methodological foundation." *Id.*

While *Shepherd* is an out-of-circuit district court decision, it aligns with other decisions cited in the United States' *Daubert* motion (*see* ECF No. 207 at 13-14) and is further support to exclude Dr. Wallace's opinions regarding what TRICARE or Express Scripts could have done to mitigate PCCA's fraud or about TRICARE's state of mind.[6] Dr. Wallace opines that it was "unthinkable" that TRICARE compounding costs escalated without Express Scripts receiving "marching orders from TRICARE, and implementing them." ECF Nos. 207 at 13; 175 at 3. He speculates about what Express Scripts would have done if TRICARE forwarded a suggestion by a compounding pharmacist (Richie Ray), which proposed an alleged cost-savings measure. *See id.* He further opines about TRICARE's reasons for not considering the proposal. *See id.*

These opinions are groundless because Dr. Wallace admitted he was never employed by TRICARE or Express Scripts and has no personal knowledge of their actions or motives. *See* ECF No. 207-2; Wallace Dep. at 29:9–30:2. His opinion that TRICARE gave unspecified "marching orders" to Express Scripts is not based on any facts but is wholly speculative. The same is true for his opinions about what Express Scripts would have done with a purported cost-savings measure and TRICARE's supposed reasons for not considering the proposal. As the *Shepherd* Court found, these are not admissible expert opinions, but impermissible speculations that lack any "reliable

---

[6] *Shepherd* also supports the United States' pending motion to exclude PCCA expert Dorothy DeAngelis' opinions about TRICARE's state of mind. *See* ECF No. 227 at 5–7. Ms. DeAngelis opines that Government agencies knew about the high cost of compound drugs with PCCA ingredients and took "deliberate actions" not to implement cost controls. *See id.*

methodological foundation." 2026 WL 105725, at *8. Accordingly, for the reasons set forth in the United States' *Daubert* motion, these and the other opinions of Dr. Wallace should be excluded.

**Dr. Wallace's Status as a Non-Retained Expert and Failure to Provide Expert Report**

Finally, a court in the Southern District of Texas struck an individual from testifying at trial as a non-retained expert because he was not involved in the events leading to the litigation. *See Universal Plant Servs., LLC v. Meier*, No. 4:22-CV-2364, 2025 WL 3500634, at *5 (S.D. Tex. Aug. 19, 2025), *report and recommendation adopted sub nom. Universal Plant Servs., LLC v. Adams*, No. CV H-22-2364, 2025 WL 3500631 (S.D. Tex. Sept. 19, 2025). In that case, the defendants had argued that an individual, Mr. Hanks, was properly designated as a non-retained expert because he had been involved in the industry and his testimony would rebut assumptions made by the plaintiffs' damages expert. The Court rejected this argument, reasoning that "firsthand knowledge of activities in which one is personally involved is not sufficient to qualify one as a non-retained expert in a lawsuit with which they have had no involvement." *Id.* The Court explained that "[a] non-retained expert's testimony must derive 'from his ground-level involvement in the events giving rise to the litigation.'" *Id.* The Court concluded that because "[d]efendants have not shown that Hanks' testimony would derive from his personal involvement with the events leading to the present dispute," "[d]efendants' designation of Hanks as a non-retained expert is improper. And because Hanks has not submitted a report, he cannot provide evidence as a retained expert." *Id.*

*Meier* is directly on point and further supports exclusion of Dr. Wallace as a non-retained expert under Fed. R. Civ. P. 26(a)(2)(C). Dr. Wallace was not involved in the events leading up to this litigation. *See* ECF No. 207-2; Wallace Dep. at 43:11–19. Dr. Wallace confirmed he was not involved in setting PCCA's AWPs; nor was he involved in selling or marketing PCCA products

during the relevant time frame. *See id.* In fact, PCCA's designation states that he only began serving as a consultant for PCCA in November 2016 (*see* ECF No. 175 at 3), outside the operative timeframe of this litigation—2012-2015. Because Dr. Wallace was not involved in the events leading to this litigation, PCCA's designation of him as a "non-retained expert" was improper. And because he never submitted an expert report or complied with the requirements of Rule 26(a)(2)(B), he cannot be permitted to testify.

**CONCLUSION**

The United States respectfully requests the Court grant its Opposed Motion to Exclude the Expert Testimony of William Wallace. ECF No. 207.

Dated: September 2, 2026

Respectfully submitted,

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY
WESTERN DISTRICT OF TEXAS

*/s/ Mary F. Kruger*
MARY F. KRUGER
Assistant United States Attorney
Georgia Bar No. 6282540
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
Tel: (210) 384-7360
Fax: (210) 384-7322

BRETT A. SHUMATE
ASSISTANT ATTORNEY GENERAL
CIVIL DIVISION

*/s/ Sanjay M. Bhambhani*
JAMIE A. YAVELBERG
NATALIE A. WAITES
SANJAY M. BHAMBHANI
NATHAN P. GREEN
JOHN M. DECK
Attorneys, Civil Division
Commercial Litigation Branch
U.S. Department of Justice
Post Office Box 261
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-5106
sanjay.bhambhani@usdoj.gov

*Attorneys for the United States of America*

**CERTIFICATE OF SERVICE**

I certify that, on September 2, 2026, I served the foregoing document via CM/ECF on all counsel of record registered to receive CM/ECF notifications.

*/s/ John M. Deck*
JOHN M. DECK